IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JONATHON GLADNEY,              )
#228295,                       )
                               )
          Plaintiff,           )
                               )
     v.                        )     CASE NO. 2:17-CV-21-ECM-JTA
                               )              (WO)
                               )
JOSEPH HEADLEY, WARDEN, et al. )
                               )
          Defendants.          )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed on

January 11, 2017 by Jonathon Gladney, an indigent state inmate, challenging actions which

occurred at Elmore Correctional Facility.  (Doc. 1).  Specifically, Gladney alleges that the

defendants acted with deliberate indifference when they failed to protect him by allowing

inmate Davieons Williams to enter "A-Dorm where inmate Jonathon Gladney was assigned

on August 30, 2016 [and] inmate Jonathon Gladney stabbed inmate Davieon Williams after

being assaulted."  (Doc. 1 at p. 3).

The named defendants are Warden Joseph Headley and Correctional Officers

Walter Posey and Ramus Johnson.  Gladney seeks monetary damages and injunctive relief

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the
docketing process.

from the defendants, but he does not state in which capacity he sues the defendants.  (Doc. 23 at 2).  The defendants filed a special report (Doc. 30, Ex. 1), a supplemental special report (Doc. 38, Exs. 1-4), and a second supplemental special report.  (Doc. 65, Exs. 1-2).  These special reports, as supplemented, included relevant evidentiary materials in support of these reports, specifically affidavits and prison documents addressing the claims presented by Gladney.  In these documents, the defendants deny they acted with deliberate indifference to Gladney's safety needs.

After reviewing the special reports and exhibits, the court issued an order on February 6, 2018, requiring Gladney to file a response to the defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  (Doc. 66).  This order specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 66 at p. 2).  Gladney filed responses to this order.  (Docs. 67 and 68).  Pursuant to the directives of the order entered on February 6, 2018, the court now treats the defendants' special report and

supplements thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [now dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (holding that moving party bears the initial burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64

---

[2]Although Rule 56 underwent stylistic changes in 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

F.3d 590, 593 (11th Cir. 1995) (same).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24.  The moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011)

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.").  Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.  *Jeffery*, 64 F.3d at 593–94 (internal quotation marks omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint

when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff may not rest upon his pleadings but must produce "sufficient [favorable] evidence" which would be admissible at trial supporting each essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990) (internal citation omitted). Conclusory allegations based on a

plaintiff's subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that grant of summary judgment is appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding that summary judgment is appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. — and can

only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing *Anderson*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence

before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–24. A court may grant summary judgment where the pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact. *Id.* To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S. Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Gladney's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Gladney has failed to

8

demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

## III. FACTS

On August 30, 2016, at approximately 10:20 a.m., inmates Davieon Williams and Jonathan Gladney were counseled due to their involvement in a verbal altercation with each other.  (Doc. 65, Exs. 1 and 2).  After Defendant Correctional Officer Posey talked with each inmate and was assured that the problem was resolved, the inmates both signed a Living Agreement by which the inmates acknowledged the resolution of their dispute and affirmed that "we can live at this institution without violence existing between us." (Doc. 38-2).  Following the execution of the Living Agreement, the inmates were allowed to return to population as per procedure.  (Doc. 38, Exs. 1-4; Doc. 65-1; Doc. 65-2).  Gladney claims that the inmates were escorted to A-2 Dormitory, but the defendants deny this occurred.  (*Id.*).  Defendant Correctional Officers Posey and Johnson further testified by affidavit that they never allowed inmate Williams into an unauthorized area.  (*Id.*).

Later that day, Correctional Officers responded to a disturbance in the A-2 Dormitory where they discovered inmate Davieon Williams had been stabbed.  He later died from his injuries.  Gladney admitted to stabbing inmate Williams and plead guilty at a disciplinary hearing.  (Doc. 30-1).  In his complaint, Gladney admits he stabbed inmate Williams following Williams' assault on him which occurred in the A-2 Dormitory.  (Doc. 1 at p. 3).  He further alleges that the defendants are liable to him for their failure to protect

him from Williams' assault.  (Doc. 1 at pp. 2-3).  Specifically, he alleges that "had not

inmate Davieon Williams been allowed {sic} to enter A#2 Dormitory there would be no

cause fore {sic} such action."  (Doc. 12-1 at p. 2).  Gladney suffered no injuries from the

alleged assault.  (Doc. 30-1 at p. 2).

## IV.  DISCUSSION

### A.  ABSOLUTE IMMUNITY

To the extent Gladney requests monetary damages from the defendants in their

official capacities, they are entitled to absolute immunity.  Official capacity lawsuits are

"in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v.*

*Graham*, 473 U.S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by
> private parties against States and their agencies [or employees]. There are
> two exceptions to this prohibition: where the state has waived its immunity
> or where Congress has abrogated that immunity. A State's consent to suit
> must be unequivocally expressed in the text of [a] relevant statute. Waiver
> may not be implied.  Likewise, Congress' intent to abrogate the States'
> immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks

and citations omitted).  Thus, a state official may not be sued in his official capacity unless

the state has waived its Eleventh Amendment immunity, *see Pennhurst State School &*

*Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's

immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

## B.  RESPONDEAT SUPERIOR

To the extent Gladney alleges that Warden Joseph Headley is liable to him in his supervisory position based on a theory of respondeat superior, that claim must fail.  Indeed, the law is well established; supervisory officials cannot be held liable in § 1983 actions under any theory of respondeat superior or vicarious liability.  *See Belcher v. City of Foley,*

11

30 F.3d 1390, 1396-97 (11th Cir. 1994).  Accordingly, the court concludes that Gladney's

claims premised upon a theory of respondeat superior are due to be dismissed.

## C.  DELIBERATE INDIFFERENCE

      **1.  <u>Standard of Review</u>.**  "A prison official's duty under the Eighth Amendment is

to ensure reasonable safety, a standard that incorporates due regard for prison officials'

unenviable task of keeping dangerous men in safe custody under humane conditions."

*Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations

omitted).  Officials responsible for prison inmates may be held liable under the Eighth

Amendment for acting with "deliberate indifference" to an inmate's health and safety when

the official knows that the inmate faces "a substantial risk of serious harm" and with such

knowledge disregards the risk by failing to take reasonable measures to abate it.  *Id*. at 828.

A constitutional violation occurs only "when a substantial risk of serious harm, of which

the official is subjectively aware, exists and the official does not respond reasonably to the

risk."  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "It is not, however, every

injury suffered by one prisoner at the hands of another that translates into constitutional

liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S. at 834.

"Within [a prison's] volatile community, prison administrators are to take all necessary

steps to ensure the safety of . . . the prison staffs and administrative personnel. . . .  They

are [also] under an obligation to take reasonable measures to guarantee the safety of the

inmates themselves."  *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation

12

marks omitted).  The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same).  "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted).  "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim.  *Farmer*, 511 U.S. at 837.  "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

 The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099. With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544 (2007).  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .  The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . .  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

14

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]."  *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted).  Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id.*  Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted).  In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm and with this knowledge consciously disregard the risk.  *Farmer*, 511 U.S. at 837.

   **2.  <u>Failure to Protect</u>.**  To survive the properly supported motion for summary judgment filed by the defendants, Gladney must first demonstrate an objectively substantial risk of serious harm existed to him and "that the defendants disregarded that known risk

by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F.

App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100.  If he establishes these

objective elements, Gladney must then satisfy the subjective component.  This requires

Gladney to show "that [each] defendant subjectively knew that [he] faced a substantial risk

of serious harm.  The defendant must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and [they] must also draw the

inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence
> that the defendant-official had subjective knowledge of the risk of serious
> harm.  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  In
> determining subjective knowledge, a court is to inquire whether the
> defendant-official was aware of a "particular threat or fear *felt by [the]*
> *[p]laintiff*."  *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003)
> (emphasis added).  Moreover, the defendant-official "must be aware of
> specific facts from which an inference could be drawn that a substantial risk
> of serious harm exists — and the prison official must also draw that
> inference."  *Id*. at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

The undisputed evidence shows that in the morning of August 30, 2016, Gladney

and inmate Williams were escorted to the shift office following a verbal altercation.

Defendant Correctional Officer Johnson reported the situation to Correctional Lieutenant

Walter Posey.  (Doc. 65-2).  Posey counseled Gladney and Williams and was assured by

each of them that the situation was resolved.  (Doc. 65-1 at p. 1).  Posey then witnessed the

signing of a Living Agreement by both inmates.  (Doc. 65-1; Doc. 38-2).  In this Agreement

Williams and Gladney affirmed that "we can live at this institution without violence

existing between us." (Doc. 38-2).  Following the execution of the Living Agreement, the inmates were allowed to return to population per normal procedure.  (Doc. 65-1).  Later that day, Gladney stabbed and killed Williams in Dorm-A.  (Doc. 30-1).  Gladney claims that he stabbed Williams because Williams assaulted him.  (Doc. 1 at p. 3).  He further claims that "had not inmate Davieon Williams been allowed {sic} to enter A#2 Dormitory there would be no cause fore {sic} such action."  (Doc. 12-1 at p. 2).

Based upon the court's careful review of all the evidence, the court concludes that Gladney fails to even allege, much less offer any proof, that the defendants were aware he was at risk for suffering an assault. Rather, the undisputed evidence shows that following a verbal altercation, Defendant Posey had received assurances by both Gladney and Williams that they could live together without violence.  Further, the evidence shows that they were returned to the population per normal procedure.  Gladney makes no allegations about any threats or occurrences following the execution of the Living Agreement between him and Williams of which the defendants were aware.  Nor does he offer any evidence of any threats or occurrences following the execution of the Living Agreement of which the defendants were aware.  Rather, he claims that because the defendants allowed Williams to enter an unauthorized area, he was assaulted by Williams which resulted in his stabbing and killing Williams.  However, the undisputed evidence shows that neither Defendant Correctional Officer Posey nor Johnson allowed Williams into an unauthorized area.  (Doc. 65-1 at p.2; Doc. 65-2 at p. 2).  Further, Gladney fails to present any evidence of any rule

or policy prohibiting Williams from entering Dorm-A. Accordingly, the Court concludes that summary judgment is due to be granted in favor of the defendants on the claim alleging they acted with deliberate indifference to Gladney's safety.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be DISMISSED with prejudice.

4. No costs be taxed.

On  or  before  **December  23,  2019**,  the  parties  may  file  objections  to  this Recommendation.   A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure  to  file  written  objections  to  the  Magistrate  Judge's  findings  and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11TH Cir. R. 3-

18

1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 9th day of December, 2019.

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE